# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

DONNY J. SEXTON,

      Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of Social Security,[1]

      Defendant.

No. C18-1024-LTS

**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION**

## I.  INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable Mark A. Roberts, United States Magistrate Judge. Doc. No. 19. Judge Roberts recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Donny J. Sexton's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, et seq. (Act). Sexton filed a timely objection to the R&R on April 17, 2019. Doc. No. 20. The Commissioner has not responded and the deadline for a response has expired. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.  APPLICABLE STANDARDS

### A.  *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*,

3

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III. THE R&R

Sexton protectively filed an application for DIB and SSI on January 8, 2015, alleging an onset date of January 1, 2009. AR 26. A hearing was held before an Administrative Law Judge (ALJ) on May 17, 2017. AR 26. The ALJ concluded that Sexton had severe impairments due to major depression, generalized anxiety disorder, panic disorder and personality disorder. AR 29. She found that he has the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot work at unprotected heights, hazardous machinery or standing bodies of water. He can perform three to four-step tasks that are simple, repetitive and routine. The claimant cannot interact with the public, but can occasionally interact with co-workers and supervisors.

AR 30–31. With this RFC, the ALJ found there were jobs that exist in significant numbers in the national economy that Sexton can perform. AR 34. Sexton's request for review was denied on March 6, 2018. AR 1. He filed a complaint on May 14, 2018, and Judge Roberts filed his R&R on April 4, 2019.

Sexton argued that the ALJ's decision was erroneous because it was not supported by substantial evidence. Sexton argued that (1) the ALJ's RFC was deficient as it did not account for a need for extra supervision, (2) the ALJ did not properly question the vocational expert (VE) or develop the record when necessary and (3) the ALJ did not cite

4

any inconsistencies she allegedly relied on when giving little weight to the medical opinions. Doc. No. 15 at 3–7. Sexton also argued that the ALJ's decision should be vacated and remanded because the ALJ was not properly appointed. *Id.* at 7. Judge Roberts addressed both of these arguments in his R&R.

A.  *Substantial Evidence*

With respect to the substantial evidence argument, Judge Roberts first addressed the opinion of Dr. Thomas Anderegg. Dr. Anderegg stated that Sexton would "require some supervision in order to carry out instructions reliably until they were well learned." Doc. No. 19 at 15. Judge Roberts found that the ALJ properly weighed Dr. Anderegg's opinion because there was a lack of substantial treatment relationship with Sexton and his opinion was not well supported. *Id.* at 16. It was not well supported because Dr. Anderegg did not define the term "well learned," other evidence of record indicated that Sexton is able to work by himself and his other limitations contradicted the need for supervision. *Id.* at 17.

Additionally, Judge Roberts noted that Dr. Anderegg's opinion was written more than two years before the ALJ hearing and subsequent treatment notes were inconsistent with Dr. Anderegg's observations. *Id.* at 18. He further stated that no independent treating source noted a supervision limitation.[2] *Id.* at 19. Judge Roberts concluded:

> This dearth of reference to not only a supervision limitation, but also to concentration, memory, and attention issues, leads me to conclude that Dr. Anderegg's opinion that Claimant needs a supervision limitation is not supported on the record as a whole. Therefore, this factor weighs against giving Dr. Anderegg's opinion much weight.

---

[2] In fact, Carrie Merrick, LSMW, provided a "treating source opinion" in which she filled out a checkbox form and marked a box indicating Sexton had moderate impairment in "sustain[ing] ordinary routine without special supervision." AR 497. Judge Roberts addressed Merrick's opinion at length later in the R&R, so I find this is not a significant error. *See* Doc. No. 19 at 23–24.

5

*Id.* at 21.

Judge Roberts also addressed the weight the ALJ gave to the opinions of consulting psychologists Lon Olsen, Ph.D., and Myrna Tashner, Ed.D. *Id.* at 22. Olsen and Tashner opined that Sexton may need additional supervision. *Id.* However, Judge Roberts found the ALJ assigned the proper weight to both consulting psychologists' opinion because (1) Dr. Olsen relied heavily on Dr. Anderegg's opinion and (2) Dr. Tashner simply affirmed Dr. Olsen's opinion.[3] *Id.*

Next, Judge Roberts addressed the weight given to the opinion of licensed master social worker Carrie Merrick. *Id.* at 23. Merrick stated that Sexton had moderate limitations in his ability to sustain an ordinary routine without special supervision. *Id.* at 24. Judge Roberts found that the ALJ appropriately gave her opinion little weight because it is not supported by the record as a whole, is contradicted by her own treatment notes and her opinion "consists of checklists and short fill-in-the blank answers, cites no medical evidence, and gives very little explanation for its conclusions." *Id.* at 25.

Finally, Judge Roberts noted that Sexton has been noncompliant with his treatment regimen, his depression appears to be "well-controlled" and his anxiety is related to situational stressors, which do not rise to the level of mental impairment. *Id.* at 26–27. Ultimately, he concluded:

> [A]lthough the ALJ did not give any particular medical opinion controlling weight, [s]he did rely on supporting evidence from medical opinions in crafting the RFC. . . . Although the ALJ did not identify the specific evidence she found inconsistent with the various medical opinion evidence, she weighted the opinion evidence earlier in her opinion when evaluating Claimant's impairments. (AR at 30.) My independent review of the record demonstrates that substantial evidence in the record as a whole supports the ALJ's decision.

---

[3] The R&R states that "Dr. Tashner merely affirmed Dr. Tashner's opinion in its entirety." Doc. No. 19 at 22. After reading the opinions, it is clear that Dr. Tashner affirmed *Dr. Olsen's* opinion. *Compare* AR 76, *with* AR 119 -20.

6

*Id.* at 28.

B. *Appointments Clause*

With respect to Sexton's second argument, Judge Roberts pointed to five other cases in which this court has ruled that Appointments Clause challenges must be made before or during the ALJ's hearing or before the ALJ's decision became final. *Id.* at 30–31. Judge Roberts relied particularly on *Stearns v. Berryhill*, No. 17-CV-2013-LTS, 2018 WL 4380984 (N.D. Iowa Sept. 14, 2018). He concluded that because Sexton raised the Appointments Clause challenge for the first time in this court, he forfeited the objection. *Id.* at 31.

## IV. DISCUSSION

In objecting to the R&R, Sexton first argues that the R&R improperly searched the record independently to support the ALJ's RFC. Doc. No. 20 at 2–3. Sexton contends that the ALJ erred by not sufficiently explaining her reasons for the weight she gave to acceptable medical source opinions. *Id.* Second, with respect to the Appointments Clause issue, Sexton argues there is a distinction between this case and the Eighth Circuit authority relied on in the R&R. *Id.* at 3–4. Additionally, Sexton argues that it was futile for him to bring an Appointments Clause challenge before the ALJ's decision became final and, therefore, it is not untimely for him to raise the issue now. *Id.* at 4–5. I will address each issue separately.

A. *Medical Opinions*

Sexton argues that the ALJ erred because she did not give good reasons for discounting the medical opinions that included a supervision limitation. Doc. No. 20 at 1. He argues that the R&R improperly reviewed the record for substantial evidence supporting the weight given to the available medical opinions. *Id.* at 2–3.

"The ALJ must give controlling weight to a treating physician's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ must give "good reasons . . . for the weight [the ALJ gives a] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). By contrast, medical opinions which come from consultative sources are generally entitled to less weight. *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir.2003) ("The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole."). This does not necessarily mean that the opinion may be rejected: "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir.2000) (internal quotations and citations omitted); *see also Cowles v. Colvin*, 102 F. Supp. 3d 1042, 1055 (N.D. Iowa 2015). "The ALJ may reject the conclusions of any medical expert . . . if they are inconsistent with the record as a whole." *Wagner*, 499 F.3d at 842.

It is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). However, any physician's conclusion regarding a claimant's RFC addresses an issue that is reserved for the ALJ. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). The ALJ's RFC finding must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of limitations," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829

F.3d 926, 932 (8th Cir. 2016). If the ALJ's RFC is within the "zone of choice" permitted by the evidence, the court must affirm. *Culbertson*, 30 F.3d at 939.

The only treating source opinion comes from Carrie Merrick, licensed master social worker (LMSW). She provided a checkbox form indicating that Sexton has poor memory, difficulty thinking or concentrating, mild impairment in remembering work-like procedures and moderate impairment understanding and remembering instructions, carrying out detailed instructions and sustaining an ordinary routine without special supervision. AR 494–97. The ALJ gave Merrick's opinion little weight because Merrick imposed "greater limitations than can be supported by the medical record and by the statements and testimony of the claimant." AR 33.

Dr. Thomas Anderegg provided a non-treating examining source opinion as part of a mental status exam referral by Disability Determination Services. AR 418. Sexton saw Dr. Anderegg in April 2015. AR 418. Dr. Anderegg noted that Sexton was able to work by himself and likes to stay isolated as much as possible. AR 419. He was alert and oriented, with clear and logical thinking. *Id*. During the psychological evaluation Sexton could remember two of three words after a short delay, and his remote memory was deemed "variable." AR 420. He was able to follow a three-step oral command and accurately reproduce a simple geometric design. *Id*. He could recall only three of twenty-five aspects of a short story. *Id*. Dr. Anderegg concluded that Sexton has "significant problems on tasks that require attention, concentration, and short-term auditory memory." *Id*. He stated that Sexton "would require some supervision in order to carry out instructions reliably until well learned." AR 420. The ALJ gave little weight to Dr. Anderegg's opinion because it "is not consistent with or supported by the record as a whole." AR 33.

The final two medical source opinions came from consulting psychologists Lon Olsen, Ph.D. and Myrna Tashner, Ed.D. Both gave Dr. Anderegg's opinion great weight. AR 74. Dr. Olsen noted that Sexton had "sustained concentration and persistence limitations" but was not significantly limited in understanding and

remembering very short and simple instructions or work-like procedures. AR 75, 76. Dr. Olsen concluded that Sexton was moderately limited in his ability to understand and remember detailed instructions and he was not significantly limited in his ability to sustain an ordinary routine without special supervision or make simple work-related decisions. AR 75. Dr. Olsen ultimately concluded that "[Sexton] would be capable of three – and four – step activities that do not require intense concentration" but "may need additional supervision until he has learned work activities." AR 76. Dr. Tashner's opinion is the same. AR 119.[4] The ALJ gave Dr. Olsen's opinion and Dr. Tashner's opinion little weight because their opinions are "not entirely consistent with the medical record and [the ALJ] found differing degrees of limitations than expressed in their opinions." AR 33.

Inconsistency with the medical record and with the claimant's testimony are good reasons not to give controlling weight to medical opinions. *See Stormo v. Barnhart*, 377 F.3d 801, 805–06 (8th Cir. 2004) (opinions from treating sources may be "given less weight if they are inconsistent with the record as a whole"); *Kinzebach v. Berryhill*, No. 16-CV-2114-LRR, 2018 WL 1023600 at *4 (N.D. Iowa, Jan. 19, 2018). The ALJ gave both of these reasons in her opinion. The only remaining issue is whether these reasons are supported by substantial evidence.

A court must affirm the Commissioner's decision when it is supported by substantial evidence in the record as a whole. *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015). When reviewing the ALJ's decision, the court must take into account evidence that both supports the decision and detracts from it. *Kluesner v. Astrue*, 607, F.3d 533, 536 (8th Cir. 2010). The substantial evidence standard allows for drawing two inconsistent conclusions. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The court may not reverse the ALJ's decision simply because it may have reached a

---

[4] Sexton had filed for reconsideration of his claim, but Dr. Tashner stated that there were no new changes and the assessment was affirmed as written. AR 119.

different conclusion or because substantial evidence supports a contrary conclusion. *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion. *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999).

The ALJ discussed other medical evidence in the record, even if she did not detail every inconsistency. *See* AR 29–32. For example, medical treatment notes from January 2015 show that Sexton's concentration was good. AR 398. Claire Hunt, LMSW, labeled Sexton's insight and judgment as poor, but found his memory was intact. AR 417. In February, she noted his concentration was good, his thought process was within normal limits, his memory was good and his judgment was fair. AR 415. In April, Hunt's progress notes indicated Sexton had poor judgment and insight, but his memory remained intact. AR 424. Elizabeth Brimeyer, a nurse practitioner, noted that he was attentive in his appointment, had slow thought processes and his judgment and insight were poor to fair. AR 440, 443. She noted in May 2015 that his concentration and memory were poor after he had been off medications, even though he remained attentive. AR 445–46.

Hunt noted in July and August 2015 that Sexton was attentive and his memory was intact, but he had poor insight and judgment. AR 461-62. In 2016, Dieter Boxmann, nurse practitioner, noted that Sexton's thought process was logical and his insight was below average to poor. AR 469, 472-73. Boxmann did not comment on Sexton's memory, concentration or ability to complete tasks. *Id*. Mindy Roberts noted in October 2016 that Sexton's depression had improved but his anxiety was still "out of control." AR 478. Throughout his visits to Roberts, Sexton's intelligence and memory presented as normal, but Roberts made a point to say that they had not been formally tested. AR 479, 485, 488, 491. In December, his depression continued to improve, and his anxiety had become more manageable. AR 484. In April 2017 he still reported difficulty with anxiety. AR 490. In his Claimant Function Report, Sexton noted that he has difficulty concentrating, but can pay attention for "awhile" and follow spoken

11

instructions "pretty good." AR 315. He stated that although it is difficult and takes some time to get used to changes in routine, he is fine once he does get used to the change. *Id.*

The ALJ's reasons for not giving the medical opinions little weight and thus not including a supervision limitation in the RFC are that the medical opinions are not consistent with the overall medical record and the claimant's own statement of ability. As stated above, these are good reasons for not giving substantial weight to the medical opinions. I find these reasons and the resulting RFC are supported by substantial evidence.[5] First, the ALJ included in the RFC the limitation that Sexton "can perform three to four-step tasks that are simple, repetitive and routine," which contemplates the limitations in the medical record relating to slow to normal thought processes, intact memory and fair to good concentration particularly when his memory and concentration improved with medication. AR 31. It also accounts for notes from the medical opinions that Sexton can follow simple oral commands and instructions or procedures and mild impairments in remembering work-like procedures.

Second, there are inconsistencies in the record that support the ALJ's determination. For example, Sexton stated that he is able to pay attention for awhile and follow spoken instructions. Dr. Anderegg said Sexton could remember and understand simple instruction and noted that Sexton is able to work by himself, which is inconsistent with a need for supervision so long as the assigned tasks conform to the RFC. AR 419–20. Merrick stated that Sexton attended weekly appointments for a year, but the record shows only one meeting between her and Sexton (AR 510) and only seven

---

[5] Judge Roberts pointed out that Dr. Anderegg did not define "well learned," which could cause some confusion on what limitations where involved in his supervision requirement. Doc. No. 19 at 16. However, while a definition would have been helpful, the ALJ need not seek clarifying statements unless a crucial issue is undeveloped. *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). Here, the ALJ found Dr. Anderegg's opinion inconsistent with other evidence, rather than "inadequate, unclear, or incomplete," thus there was no need for a clarifying statement. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

additional appointments with other mental health professionals in the year leading up to her evaluation. *See* AR 471–74 (two appointments with Boxmann); AR 457–60; 475–83 (three appointments with Mindy Roberts); AR 484–89 (two appointments with Mindy Roberts). Additionally, Dr. Olsen concluded that Sexton was only moderately limited in his ability to understand and remember detailed instructions and was *not* significantly limited in his ability to sustain an ordinary routine without special supervision, even while giving Dr. Anderegg's opinions great weight. AR 75. Other medical treatment notes consistently marked Sexton's memory as intact or good. AR 398, 415, 424, 461–62, 479, 485, 488, 491.

The court may not reverse the ALJ's decision simply because it may have reached a different conclusion or because substantial evidence supports a contrary conclusion. *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). I find there is substantial evidence in the record to support the reasons the ALJ gave for not attributing substantial weight to the acceptable source medical opinions.

### B. *Appointments Clause*

In the R&R, Judge Roberts held that this case "has the same procedural posture as several other cases wherein this Court already addressed this issue." Doc. No. 19 at 29. He stated that the Eighth Circuit has held that a party forfeits an Appointments Clause claim by failing to raise it to the agency first. *Id.* at 31. Thus, he recommends that Sexton's request for remand on this basis be denied. *Id.*

Sexton attempts to distinguish this case from other precedential cases by arguing that there is no general issue exhaustion requirement in social security cases, this case was decided after the Social Security Administration's emergency message, EM-18003, became effective and it was futile for him to bring an Appointments Clause challenge because no one at the agency was empowered to provide him relief. Doc. No. 20 at 3–5.

I find nothing in Sexton's arguments that compels me to amend my analysis of this issue in prior cases, such as *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018). Stearns argued that social security ALJ's are "Officers of the United States" within meaning of the Appointments Clause and have not been properly appointed. *Id.* at *4. Stearns contended that I could consider this issue even when not raised on appeal because there is no issue exhaustion requirement in Social Security appeals.[6] *Id.* Stearns argued that an issue need not be raised if the ALJ does not have authority to decide it. *Id.* at *5. I found that claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings and "*Lucia* made it clear that, with regard to Appointments Clause challenges, only 'one who makes a timely challenge' is entitled to relief." *Stearns*, 2018 WL 4380984 at *5. That means the claimant must raise the issue before the ALJ's decision becomes final, even if the claimant need not exhaust issues before the Appeals Council. *Id.* The issue must be raised before the ALJ in order to be raised on judicial review. *Id.* The argument that "an issue need not be raised if the ALJ does not have authority to decide it does not hold water under" *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). *Id.*

The cases Sexton cites from other districts to support his arguments are not binding precedent. Both rely on principles already addressed by this court. *See Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 425 (M.D. Pa. 2019) (stating there is no authority for the ALJs to resolve constitutional issues); *Muhammad v. Berryhill*, No. 18-172 (E.D. Penn. Nov. 2, 2018) (found at Doc. No. 17-2) (stating it would have been futile for the claimant to raise the issue and *Lucia* concerned only SEC proceedings). The court in *Bizarre* also acknowledged "the emerging consensus of federal district courts . . .

---

[6] Both Sexton and Stearns relied on *Harwood v. Apfel*, 186 F.3d 1039, 1042 n.3 (8th Cir. 1999) and *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003), to argue that there is no ALJ issue exhaustion in the Eighth Circuit. Doc. No. 15 at 9–10. I found and remain convinced that *Anderson* and *Harwood* are not inconsistent with the holding that claimants forfeit Appointments Clause issues by failing to raise them during administrative proceedings.

generally holds that we need look no further than *Lucia* [138 S. Ct. 2044 (2018)] to resolve the question of timeliness." 364 F. Supp. 3d at 420. I do not find these holdings persuasive. Sexton's request for remand on this basis is denied.[7]

### V.     CONCLUSION

For the reasons set forth herein:

1. Plaintiff's objections (Doc. No. 20) to the Report and Recommendation (Doc. No. 19) are **overruled**

2. I **accept** the Report and Recommendation without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Roberts' recommendation:

    a. The Commissioner's determination that Sexton was not disabled is **affirmed**; and

    b. Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**
**DATED** this 15th day of August, 2019.

_____
Leonard T. Strand, Chief Judge

---

[7] Sexton notes that the Appointments Clause issue is pending before the Eighth Circuit Court of Appeals. Doc. No. 20 at 3. The appellate court's guidance on this issue will be helpful.